314-0558 Wayne Billingsley v. Millers Classified Insurance Company The insurance policy that is the cheapest to purchase ends up being the most expensive when it comes time to collect. And this is exactly what happened here, and that's what Mr. Billingsley did, and basically what he's looking for is a free upgrade. For 27 years, he paid a premium based on the absolute minimum UM he could get. And when it came time for an accident, he decided that, well, maybe that wasn't good enough. The policy as requested in 1984 was for $30,000 UM and $30,000 UIM. And Mr. Billingsley saw that, signed that. That is what he requested. Over the years, except for when the law changed requiring a minimum of $40,000 for UM, the policy limits remained unchanged by Mr. Billingsley. He never asked for any increase. He was offered many opportunities to increase either bodily injury or increase his UM, UIM coverage, and that was in every chance basically ignored or just avoided. At one point, he did call Millers to request information regarding an umbrella policy but declined that coverage as well. So what we have is an individual who shows a history of wanting the bare minimum. About the time in the late 90s when there was an issue in various jurisdictions regarding insurance coverage of underinsured motorist coverage at the bare minimum, whether or not it was an illusory product because it would be so rare that someone could be involved in an accident with someone with insurance at the minimum rate when you would have experienced an underinsured coverage situation. The court can see at that time on the declarations page, Millers classified listed UM coverage of $40,000 and UIM coverage of $40,000 and next to it in kind of the premium section where it just tab over, it says included, I-N-C-L, included, meaning they were provided that coverage free. The company itself realized there was probably very little value in such a policy or such a limit rather and decided that they would provide the coverage because there was a possibility that an insured could use it and benefit from it but they weren't going to charge someone for it. So about the time that various litigation of which Millers was not a party to that, the litigation showed that there were definite issues of was minimum level UIM coverage an illusory product. Millers got out of the game and said, look, we've been providing it. Well, we're not required to because the law says we don't have to provide minimum level UIM coverage. We'll provide it anyway. We'll provide it free. We just won't list it on the deck page. That's the evidence in the record and the statement of Mr. Lutjohn that Millers made a corporate decision that they would stand behind their insurers in the rare case that it was beneficial to their insured and indeed as part of his testimony and as well as an affidavit that's also in the record shows that several times in Illinois and several times in other jurisdictions, the company had actually had to pay on those claims and did. So what we have is years later, an injury to Mr. Billingsley, and then there's the claim that, wait a second, when Millers deleted mention of, in the word of Mr. Billingsley, he says, when they deleted my UIM coverage, we maintain that since nothing about the coverage changed when they deleted mention of it, that the coverage wasn't deleted, and this is where we disagree with the circuit court's characterization of what happened. Millers did not delete UIM coverage from Mr. Billingsley's policy. He simply deleted mention of it on the declarations page, something that wasn't required, wasn't being paid for, yet was provided before and after the mention of it was deleted from the declarations page. Anyhow, Mr. Billingsley believed that this is evidence to him that I wasn't being provided UIM coverage. You unilaterally changed my policy. Therefore, I'm entitled to a reformation by the court, that somehow there was a material change. Well, according to the Nicholson case, which is what Mr. Billingsley relies on for old policies which were prior to the statutory change could be grandfathered in, so long as they were continuations and reissuances of the current policy you had. So basically, when the law changed, everyone in Illinois didn't have to suddenly get new coverage with new exceptions and as far as a written refusal to have your UIM and UM coverage at the same level as your bodily injury coverage. So unless and until an individual applies for new coverage or there is a material change to the old policy, the old policies were grandfathered in. And according to the Nicholson case, in order to be a material change, it requires that more than a minor change in the cost of the premium and whether the insurance increases liability limits. In this case, there was no change to the premium at all because there was no charge for the UIM coverage as listed. It was included both before and after, but at least on the premium on its face when that mention was taken off, there was no change to the premium and indeed, Mr. Billingsley never asked to increase his limits. In fact, the cost of the policy was pretty stable throughout. When the law changed requiring an upgrade of $30,000 to $40,000 for UM slash UIM, the policy stayed the same. It was $7 per six months before, and after it went up from $30,000 to $40,000, it was still $7 per six months. So there was never anything more than a minor change in the premium. In fact, at that point, there was no change in the premium and there was no increase requested in the liability limits. Therefore, pursuant to the Nicholson case, which both the circuit court and Mr. Billingsley relied on, there was no material change. Therefore, the policy never lost its grandfathered status and continued on for 27 years until the man was injured. None of the cases cited by the plaintiffs with respect to when a policy loses its grandfather status or is considered to have been a material change amount to anything other than simply, in those cases, the policy was either never validly instituted or there was a requested change, and after the requested change, the individual insured was not provided an opportunity at that point to, hey, why don't you, or you have the opportunity to upgrade, increase your bodily injury, excuse me, increase your UIM coverage to your bodily injury limits. If you choose not to do that, you need to sign this form. Those are all the cases that deal with, hey, this is when the courts have said, hey, this wasn't a continuation of policy. You needed to offer new policy. You needed a new declination or increased coverage. So I guess the whole argument boils down to at this point is, was there or was there not a material change? And we believe that the criteria set out in Nicholson with respect to more than a minor change in the policy premium and an increase in liability limits have not been met. And common sense would tell you that if you're not changing the cost of the policy, you're not changing the coverages available under the policy, that's not a material change to the policy. There's simply a change on the face of the declarations page. But, again, the evidence in this case is that there was no change to the coverages before and after. Well, let's look at your UIM, which was in 99. I believe it kind of disappeared from the declarations page. Yes. Okay. Why was that? Because it was about the time when the litigation was going back and forth as far as Whether it's illusory. Illusory. Whether you were charging for something that would never, ever benefit the policyholder. Well, in rare situations it could. If an insured, and Millers was going through this, if an insured in Illinois got involved in an accident with someone from another state whose minimum limits were less than Illinois', you could conceivably have an underinsured situation with an insured driver. Also, because the way Millers wrote their policies, it was combined single limit. Well, let's go into that. What does that mean? What it is is instead of many policies are back when it was like a 15 slash 30, meaning 15, if you were involved in an accident with one person, one person making a claim, 15,000. If two or more were involved, 30,000 for the entire accident. Millers wrote their policies basically a combined single limit, meaning it was 30,000 or 40,000. So that was, instead of breaking it down between one or five or six or seven people, it was just in the accident, the minimum level was 30,000. Well, CSL could be used entirely for the one individual on accident, couldn't it? Correct. Wasn't he then above minimum limits at that point? Well, two things to that, sir. The Illinois Insurance Division did not believe so. Is that the letter you sent? Yes. Now, is that part of the record? It is part of the record. Do you have it in your appendix? Number 31, appendix page 31, where the Department of Insurance on another matter. Where was it found in the record? Appendix page 31. Okay. That under an issue not having to do with Mr. Billingsley, but another issue with respect to the $40,000 combined single limit. The department has never allowed a premium charge for underinsured motorist coverage at the minimum limit, as specified in the financial responsibility law. The definition of an uninsured motorist, et cetera, et cetera. Therefore, I am perplexed by your statement that you are charging a premium, which they were not, but anyway, that you are charging a premium based on recent claims. You should not have had any claims for underinsured motorist coverage at the $40,000 limit, as such coverage does not exist. But beyond that, that's not the answer. What was the letter? Did we have the letter that was actually sent? We have the letter back from the insurance department. The inquiry letter? The inquiry letter is not there. Okay, so we don't know what was being requested. We do not know what was being requested. We just know that, but regardless, that was not an issue in this case, because in this case, it's not a question of Mr. Lujan is saying there was $40,000 UIM coverage. At his deposition, Mr. Billingsley would ask, on the day you were injured, what did you believe you had with respect to your UIM coverage?  So we're not dealing with a situation where coverage was removed, the insurer thinks, I've got coverage that doesn't exist. Well, he and the insurance company are pretty much in agreement that he had a certain amount. It wasn't $300,000. Nobody's alleging $300,000 until it comes to the point where, gee, if you didn't get this refusal and the removal of mention of this is somehow a material change, which according to Nicholson it's not, but if somehow we can construe it that it is a material change, then all of a sudden you go from paying 27 years of minimum payments to all of a sudden you get a 1,000% bonus. But the issue then is, since the law requires that policies be written with UIM coverage at the same limit as UIM coverage, if for some reason this court believes that there was no coverage and there should have been coverage, the issue there is, in order to make this policy consistent with the law, they should say, well, fine, we deem that this individual had $40,000 worth of UIM coverage, which the company wouldn't dispute. That's their position is that that's what he had. He just wasn't paying for it, and they weren't going to include something on the declarations page that wasn't being paid for. I guess I thought you said that the declarations page said that it was included. Up until the point when it was removed. That's the point at which Mr. Billingsley says, you deleted my coverage. And Miller's position is, we didn't delete your coverage. You had the same coverage before that and after that. We just deleted mention of coverage that wasn't required by law and that you weren't paying for. But we as a corporation stand behind. If it would benefit our insured in that rare situation, and like I say, it was a couple times in Illinois, a couple times in other jurisdictions, where it benefited their insureds, they stood behind it. So there's no reason to believe and no evidence to show that, indeed, he did not have that coverage on the day that it was removed, or following the day it was removed from the declarations page. So in Nicholson, the insurance companies obviously were questioning about a bright line test. When do we need to consider that there is a new policy or not? And the appellate court wrote, we believe they're holding in this case that whenever liability coverage is increased above that provided under the previous policy, insurance must again offer UM coverage equal to liability coverage and obtain a signed election declining such equal coverage. This offers the nearest approximation to such a test that we can provide. And neither the statute nor Nicholson say if there's any change at all in the policy, or at least on the face of the declarations page, is when there's a new policy that you need to obtain written declination or election declining coverage. If there's an increase in the liability limits, then you go back. Because if you're not changing the liability limits, why would you then say, well, here's an individual, we need to give them another opportunity to see if they want to increase their UM or UIN coverage up to the bodily injury if they're not even changing the bodily injury coverage. And again, that's consistent with the statute and with Nicholson. Are there any other questions? Any other questions? Thank you. Mr. Simpson. Pleased to court. Good afternoon. My comments will be brief. Really the only thing I want to mention very significantly here is the issue about whether 40,000 combined single limit is exactly the same as and does not exceed 20 per person and 40 per accident. And I went over this in my brief. To me it just seems painfully obvious, but if Mr. Billingsley is in an accident and is injured and the at-fault driver has 20-40 and he has 20-40 of UIN, he has no recovery. On the other hand, under that same scenario, if he has $40,000 combined single limit UIN, then he has a $20,000 recovery. So that means under 40,000 CSL he has more coverage. As you know, the statute says, and this is for any policy issued after 1983, an insurance company cannot issue or renew a policy unless UIM is included in an amount at least equal to the total of UIM coverage where the UIM exceeds the Illinois motor vehicle minimum limits, which at the time of this accident was 20 and 40. So if 40,000 combined single limits is greater than the motor vehicle code minimum of 20 and 40, then UIM insurance has to be included in the policy. It's illegal if it isn't. So Mr. McMoneagle, and I did too, talked at some length about the Nicholson line of cases, but I don't think the court needs to reach that line of cases for two reasons. First, because the statute itself says UIM must be included. You can't not include it. And if you don't, it's illegal. It's an illegally issued policy. And secondly, the DeGrand case, and it says the same thing, which we cited in our brief, and it's a fairly old case, Illinois Supreme Court case, which said just that. The question in DeGrand was, if you have minimum limits of UIM, does the insurance company have to offer UIM? And the court said, no. They don't have to offer it because the coverage is mandatory. You have to have the UIM in the policy. And specifically what they said was that neither the insured nor the insurer may reject that coverage. So if I'm wrong about the CSL part of this case, I think I have a problem. But I think I'm right. And the other thing I want to mention is this business about, well, we took it off the declarations page, but the coverage was still there, which to me is nonsense. You know, if I go to my insurance agent and I say I want 100 and 300 in bodily injury coverage, and then all of a sudden I get a policy and it's not there, I don't think it's sufficient for the insurance company to say, well, it really is there, it's just not on your policy. That doesn't make any sense. The fact of the matter is that not only was it not on the declarations page, but in the depositions we provided, Miller's people said that the endorsement for UIM coverage was not mentioned on the policy nor attached to the policy. So in other words, there was no UIM coverage. And that's illegal. As far as the remedy is concerned, Mr. McMonigle mentioned this. The only Supreme Court in the Lee case, Lee v. John Deere, imposed the remedy of UIM at the bodily injury limit. They said to the insurance company, you screw up and you're going to be up, in this case, to 300,000. And in Lee, what happened was that it was a rejection case. The insurance company correctly had the insured sign a rejection of UIM in excess of the minimums. And the insured was fine with that, except the policy was issued before the rejection form was received. So in other words, the insured was not looking for more UIM coverage. He didn't ask for it. In fact, he rejected it. But the court said, that doesn't matter. It doesn't matter what the insured's intent was or what he wanted. If you issue a policy that violates UIM statute, we're going to impose limits at the bodily injury level. So that's the correct remedy. Thank you very much. Thank you, Mr. Simpson. Mr. McMonigle, for reply? Very briefly. With respect to the question of whether $40,000 CSL is the same as 2040, well, according to the Illinois Department of Insurance, it is. $40,000 CSL was minimum. It says that $40,000 UIM coverage, that doesn't exist. Why? Because it's minimum coverage. And with respect to neither Nicholson nor the statute require reclamation in such a case. The law requires that there must be a material change before you're deemed to have a new policy. That it's not a continuation or a reissuance of the previous one. And in order to have the material change, the definition is more than a minor change in the premium or if the liability limits are increased. Neither of that was the case here. The evidence in this case is that the coverage was provided. The coverage didn't need to be listed because it wasn't required by law. But it was provided. And while they can say if it's not there, it doesn't exist. The evidence is that it was there and did exist because the company's own actions show that the coverage was there and existed in the rare case. And this isn't even one of those cases. This case has nothing to do with did the man have $40,000 UIM or not. Because $40,000 UIM, because of the anti-stacking, it doesn't accomplish him getting where he wanted to be. He's already gotten $100,000 from the tort fees. What he's looking for is more. And the only way he gets more is if he has an uninsured insurance limit above $100,000. But he had the $40,000. It wasn't listed. It wasn't required by law because it was minimum coverage. Why do you think he thought it was $30,000? Because originally he had requested $30,000. It wasn't listed on the declarations page. Yes. And it didn't need to be listed because it was minimum coverage. That was at the time it was... At the time he requested it. At the time he requested it was 15... No, what was it? Individual... It was 1530. 1530. And he requested $30,000. At that time. At that time. Then the minimums kept going up. Then the minimum went up to $40,000. And was it on the declarations page when he first requested it in the 80s? I... I'm assuming it is because at one point it was eventually taken off. But... I'm assuming it was. I don't want to take up too much time to find it. It would be in the appendix between page 3 and about page 7 or 8. You can certainly look at that. I'm sure it probably was. You can sue Nicholson to say that a material change is only something requested by the insured and not something done by the insurer. That would be correct. Well, no, because if the insurance company would appear, if they institute more than a minor change in the premium, that, I guess, could be considered. Generally, though, there's not going to be more than a minor change in the premium unless there has been an increase, a request for increase in coverage. And we know Mr. Billingsley never requested any increases in coverage. But with respect to Lee, that policy required, in order to become a valid policy, had to have the rejection. This policy was valid before that requirement even took place. So then as the law evolved and the statute evolved, it said, hey, if you apply for a new policy after 87, 89, 91, whenever these changes occurred, then you have to have the following things. If it's a new policy, meaning if it's a grandfather policy, you can continue with the same coverage you have at the same limits and what is required and what is not required, and a reissuance will not be considered getting a new policy. It's just a continuation of the old policy. So in this case, there was a valid policy of insurance in effect. Just to answer Justice Wright's question, on the automobile application dated March 30, 1984, the underinsured amount is listed as INC, $30,000. Yes, it is. Thank you. No, no, that's, which I guess goes back to the point of, there were many things maybe not necessarily listed on the declarations page, but we know from history, in this case, it wasn't even issued whether it was $30,000 or $40,000. The man thought he had $30,000 to $40,000. The company thought he had $30,000 to $40,000. The man thought he had $30,000. He thought he had $30,000. We'll give him the benefit of the doubt, and he had $40,000. The company thought he had $40,000. It was providing him $40,000. It wasn't charging him for it. It had never charged him for any of his underinsured motorist coverage because it was always at the minimum level. And so this isn't a situation where there was a bait and switch, or the insurer thought he had something until he went to collect, or the insurance company changed his coverage to his detriment and didn't tell him. He was provided more than he requested. When they increased the, what, a 25% increase, a 33% increase from $30,000 to $40,000 didn't increase his premium $1, provided him the extra coverage for the same amount of money, and then finally decided that, look, we're providing this, which we're not required to provide. We don't have to provide it. We're providing it free of charge, and there's an issue of, are these illusory products that we don't want to get involved with? Are we selling this? If it's listed, is it part of the premium, but it's just kind of hidden in there? We don't want any of that. We're removing mention of it. The man has the same coverage before and after we remove mention of it. Why would we know that? Because of the actions of the company. Anything further? Any questions? I won't beat it anymore. Thank you so much. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued as soon as possible. Right now, we'll take a short recess.